CINCINNATI TYROLIT, INC.,    :
                       :    NO:  1:06-CV-00665
       Plaintiff,     :
                       :
    v.                 :
                       :    **OPINION AND ORDER**
A.R. SOLTIS & CO., INC.,   :
         et al.,     :
                       :
       Defendants.    :

 

This matter is before the Court on Plaintiff's Motion for Summary Judgment (doc. 90), Defendant A.R. Soltis West, LLC's Response in Opposition (doc. 105), and Plaintiff's Reply (doc. 107). For the reasons indicated herein, the Court GRANTS Plaintiff's Motion on its claim for unjust enrichment.

## I.  Background

Plaintiff Cincinnati Tyrolit, Inc. ("Tyrolit") alleges that for many years, it used A.R. Soltis & Co. ("A.R. Soltis"), a Michigan-based company, as distributor of Plaintiff's industrial-grade grinding products (doc. 90). In late 2003, A.R. Soltis, which was owned by Dick Soltis, formed a new entity, Defendant A. R. Soltis West, LLC ("Soltis West"), to sell Plaintiff's products in the Chicago area (Id.). Randy Misner ("Misner") and Dick Soltis co-owned Soltis West, until late 2005, when Dick Soltis sold his interest in the company, leaving Misner as the sole owner (Id.).

Two documents serve as a framework for segments of the parties' arguments. First, Dick Soltis and Misner signed a

promissory note on open accounts due to Plaintiff in March 2005 (Id.).   On Misner's copy, Misner tacked on a "franchising agreement" clause to both the note and the security agreement purporting to give Soltis West a guaranteed distributorship of Plaintiff's products for the five-year term of the note (Id.). However, Plaintiff claims it never agreed to a guaranteed distributorship and never recognized Miser's version of the note (Id.).   Dick Soltis' signed copies of the promissory note and security agreement contained no clauses regarding a franchising agreement with regard to either A.R. Soltis or Soltis West (Id.).

Dick Soltis executed the second document, a "Distributor Agreement," on March 18, 2005, on behalf of Soltis West (Id.).  The Agreement gave Soltis West the non-exclusive right to distribute Plaintiff's products, and gave Plaintiff the right to terminate the agreement with or without cause, with thirty days notice (Id.).

From August to November 2005, Plaintiff shipped its products to and on behalf of Defendant Soltis West (Id.).  In the summer and fall of 2005, Plaintiff informed Dick Soltis and Misner that over one hundred invoices due to Soltis West were beginning to age unacceptably (Id.).   As a result of this issue, along with alleged customer complaints and alleged abuse of special pricing policies, Plaintiff discontinued the distributorship agreement with Soltis West, effective November 11, 2005 (Id.).

On October 5, 2006, Plaintiff filed this action, asserting a claim on account and alternative claims of promissory

estoppel and unjust enrichment (doc. 1). On March 2, 2009, Plaintiff filed the instant Motion for Summary Judgment against Soltis West for its account claim on over one-hundred unpaid invoices, and in the alternative, for promissory estoppel and unjust enrichment (doc. 90). Plaintiff alleges Defendant Soltis West purchased $150,872.98 worth of its industrial-grade grinding products, but has failed and refused to pay for such products (Id.).

Soltis West, in contrast, argues that it had an exclusive five-year distributorship agreement with Plaintiff, Plaintiff cancelled the agreement in bad faith, and as a result, Defendant lost over $300,000.00 over the three years remaining in the contract (doc. 105). Defendant further argues Plaintiff tortiously interfered with its business relations, and that it is entitled to credits for defective merchandise amounting to $30,000.00 (Id.). In Defendant's view, parole evidence is admissible in this case to show that Plaintiff fraudulently induced Defendant to enter into a promissory note with Plaintiff for $150,000.000 on the promise of a guaranteed five-year distributorship (Id.). Defendant argues genuine issues of material fact surrounding the alleged distributorship agreement, as well as required credibility determinations as to the parties to the alleged contract, necessitate a trial in this matter (Id.).

In its Reply, Plaintiff argues Defendant merely attempts to cloud the record, and fails to create any genuine issue of

material fact precluding summary judgment (doc. 107).  This matter
is now ripe for the Court's consideration.

**II. Analysis**

**A. The Summary Judgment Standard**

A grant of summary judgment is appropriate "if the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56;
see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368
U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d
376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol,
Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th
Cir. 1992) (per curiam).  In reviewing the instant motion, "this
Court must determine whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law."  Fatton
v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal
quotation marks omitted).

The process of moving for and evaluating a motion for
summary judgment and the respective burdens it imposes upon the
movant and non-movant are well settled.  First, "a party seeking
summary judgment ... bears the initial responsibility of informing
the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Garino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C.D. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."

5

Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating

that no material facts are in dispute.  See Matsushita, 475 U.S. at

587.  The fact that the non-moving party fails to respond to the

motion does not lessen the burden on either the moving party or the

court to demonstrate that summary judgment is appropriate.  See

Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455

(6th Cir. 1991).

## B.  The Parties' Arguments

### 1.  Plaintiff's Motion for Summary Judgment

Plaintiff contends there is no dispute that Defendant

never paid it for over $150,000.00 worth of products, such that it

is entitled to judgment as a matter of law (doc. 90).  Plaintiff

argues Defendants' defenses are meritless that Plaintiff breached

an alleged franchising agreement, that Plaintiff tortiously

interfered with Defendant's business relations, or that Plaintiff

owes Defendant some credit for defective merchandise (Id.).

Citing National Check Bureau v. Buerger, No. 06CA008882,

2006 Ohio App. LEXIS 6576, *P21, (Ct. App. Ohio, December 18,

2006), Plaintiff argues it has met all the elements to establish a

claim on account, including a copy of the account naming the party

to be charged, establishing the balance due, and an itemization of

debits and credits on the account (Id.).   In the alternative,

Plaintiff argues it conferred a substantial benefit on Defendant,

Defendant knew it benefitted, and Defendant's retention of more

than $150,000 of Plaintiff's inventory is unjust (Id.).  As such,

Plaintiff argues it has a claim for unjust enrichment (Id. citing

7

<u>Hambleton v. R.G. Barry Corp.</u>, 12 Ohio St. 3d 179, 183 (1984)).

Finally, Plaintiff argues Defendant Soltis West's actions in submitting purchase orders induced Plaintiff to ship products, that Defendant's failure to pay for such products amounts to an injustice, such that the doctrine of promissory estoppel applies (<u>Id</u>.).

Plaintiff further attacks Defendant's defenses, arguing first that Misner's "franchising agreement" clause on the promissory note and security agreement is unenforceable under the parole evidence rule (<u>Id</u>.). Plaintiff argues such clauses are unenforceable as they were superceded by the subsequent distributorship agreement it entered with Dick Soltis (<u>Id</u>.). In Plaintiff's view, the agreement with Dick Soltis represents the parties' final written integration of their agreement, and therefore may not be varied or contradicted by Misner's clauses (<u>Id</u>. <u>citing</u> <u>Galmish v. Cicchini</u>, 90 Ohio St.3d 22, 27 (2000)).

Plaintiff next argues that Defendant's alleged defense that Plaintiff tortiously interfered with Defendant's business relationships fails as a matter of law, because Plaintiff's alleged conduct was privileged (<u>Id</u>.). Assuming Defendant's contention is true that Plaintiff interfered with Defendant's business relationships, Plaintiff contends its actions were taken in good faith to preserve the integrity of its distributor agreements and to maintain its customer base following termination of a distributor agreement (<u>Id</u>.). Plaintiff argues that Misner's

8

deposition testimony shows he intended to circumvent the termination of the distributorship relationship, and Plaintiff was entitled to take steps to ensure it no longer did business with Defendant, either directly or indirectly (Id.). Plaintiff further argues there was nothing improper in its contacting of any of Defendant's customers following the termination of the agreement so as to inform them of the termination and seek a direct business relationship (Id.).

Finally, Plaintiff argues Defendant fails to meet its burden of proof on the claim that Plaintiff owes it credits for allegedly defective products sold to Burgess-Norton and Roll Center (Id.). Plaintiff contends Misner has thus far only offered vague statements in support of such claims, has failed to identify precisely what products were affected, and has failed to even state the amount of credits allegedly owed (Id.). Plaintiff signals Defendant only proffers documentary evidence involving transactions that took place after Plaintiff terminated the distributorship agreement (Id.). Under these circumstances, Plaintiff argues Defendant has failed to submit sufficient evidence that a fact-finder could reasonably conclude Defendant is entitled to any credits (Id.).

### 2. Defendant's Response in Opposition

Defendant argues that Misner is the managing partner of Soltis West, and that only he, and not Dick Soltis, is authorized to execute contracts for Soltis West (doc. 105). Defendant avers

9

that Misner would not have entered into the promissory note without a five-year distributorship agreement, which he states was orally agreed to by Plaintiff's President, Peter Mertens, on January 10, 2004 (Id.). Misner's testimony indicates he added the franchising agreement clauses so as to modify the documents, which had not yet been executed by Plaintiff, before sending the documents to Plaintiff (Id.). According to Defendant, a few days later, when Dick Soltis was at Plaintiff's offices in Cincinnati, Plaintiff asked Dick Soltis to sign the distributorship agreement "purportedly on behalf of [Soltis] West." In Defendant's view, Dick Soltis failed to notice the agreement lacked a five-year distributorship clause (Id.). Moreover, according to Defendant, Plaintiff tried to defraud Misner by attempting to enter into the agreement with Dick Soltis (Id.). Therefore, Defendant argues, parole evidence is admissible to determine the intent of the parties (Id.).

In Defendant's view, Plaintiff unilterally terminated their five-year agreement after only one year, leaving Defendant without the guaranteed income stream—of more than $300,000.00—upon which it relied to pay the note balance and incur trade debt (Id.). Defendant further argues Plaintiff improperly withheld special pricing from Defendant and owes Defendant credits of over $30,000.00 (Id.). Defendant contends there are issues of fact to be determined at trial, including the amount of credits to which it is entitled, whether the parties agreed to a five-year

10

distributorship agreement, whether Misner's franchising clause was binding on Plaintiff, and whether Plaintiff improperly breached the agreement (Id).

### 3. Plaintiff's Reply

Plaintiff reiterates in its Reply its view that Defendant's alleged franchising agreement is unenforceable under the parole evidence rule, and affords no defense to payment of the amounts owed to Plaintiff (doc. 107). Plaintiff argues Defendant's new argument that it was defrauded into signing the March 18, 2005 Distributorship Agreement does not preclude the operation of the parole evidence rule (Id. citing Galmish, 90 Ohio St.3d at 29 ("the parole evidence rule may not be avoided by a fraudulent inducement claim which alleges the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing")). Plaintiff argues Defendant's argument that Dick Soltis was not authorized to enter into the Distributor Agreement on behalf of Soltis West, contradicts Misner's earlier deposition testimony (Id.). Moreover, argues Plaintiff, under Michigan law, which controls, Dick Soltis had authority as an agent to enter into such agreement (Id. citing Mich. Comp. Laws §§ 450.4102 et seq.). The only way Defendant could show Dick Soltis lacked authority to enter into such agreement, argues Plaintiff, would be to show he lacked authority to do so, and that Plaintiff had actual knowledge that Dick Soltis lacked such authority (Id.).

Plaintiff next argues that Defendant's tortious interference defense is merely a repackaging of a breach of contract claim, and it is not a tort to breach a contract (Id.). Plaintiff contends Defendant has failed to meet its burden to show any of Plaintiff's conduct was not privileged as efforts to enforce the termination of Defendant's distributorship (Id.). Finally, Plaintiff contends Defendant completely failed in its Response to rectify the lack of proof on its defense that Plaintiff owes Defendant credits for defective products (Id.).

## C. Discussion

The Court finds no genuine dispute that Plaintiff shipped $150,872.98 worth of its industrial-grade grinding products to or on behalf of Defendant, and that it is owed such amount by Defendant. Plaintiff proffers a detailed record showing that Defendant submitted purchase orders for Plaintiff's products, and that Plaintiff shipped such products with invoices stating payment was due within thirty days. Plaintiff also proffers a statement of Defendant's account, showing itemized entries for each delivery and a total amount due. Defendant has offered no evidence, beyond vague unsubstantiated claims of defective products, to challenge the correctness of Plaintiff's accounting. The Court views Defendant's continued assent to the delivery of Plaintiff's products from August to November 2005 to evidence its agreement to the running balance, and ultimately to the amount due, as an "account stated." Credittrust Corp. v. Richard, Case No. 99-CA-

94, 2000 Ohio App. LEXIS 3027 at *11, (Ct. App. Ohio, July 7, 2000), citing 1 Ohio Jur. Accounts and Accounting § 24 (An account stated is "an agreement between parties, express or implied, based on an account balanced and rendered. . .an agreement between parties between whom there has been an account").  The Court therefore finds Plaintiff's action on account well-taken, and grants Plaintiff summary judgment under such theory.

The Court rejects Defendant's defenses premised on the theory that it obtained a five-year distributorship contract with Plaintiff.  Having reviewed the record, the Court finds no evidence of a meeting of the minds as to a five-year distributorship contract.  To constitute a valid contract, there must be a meeting of the minds, and there must be an offer on one side and acceptance on the other.  Noroski v. Fallet, 2 Ohio St.3d 77, 79 (1982).  In this case, the Court finds no evidence that Plaintiff ever agreed to Misner's unilateral modification of the promissory note, which attempted to create a five-year franchising agreement.  Indeed, Plaintiff's negotiation with Dick Soltis, only a few days later, of a Distributorship Agreement with completely different terms, belies the notion that Plaintiff ever agreed to Misner's terms.

The Court need not reach Plaintiff's remaining claims premised on the alternative theories promissory estoppel and unjust enrichment.  Although of course it would be unjust to allow Defendant to retain the benefit conferred upon it by Plaintiff,

there is no need to resort to a theory quasi-contract when the evidence of the account here establishes the contractual relationship between the parties.

Finally, the Court finds well-taken Plaintiff's arguments that Defendant has failed to offer adequate proof that Defendant is entitled to any credit against the amount Defendant owes Plaintiff. Nor has Defendant shown that Plaintiff's post-termination conduct amounted to anything other than legitimate, privileged efforts to protect its business interests.

## III. Conclusion

Having reviewed this matter, the Court finds no genuine issue of material fact that Plaintiff shipped to Defendant thousands of dollar's worth of its products, and that Defendant failed to pay the account due. Defendant does not challenge this core claim, but rather seeks to assert defenses based in the theory that Plaintiff breached a five-year distributorship agreement. The Court sees no evidence of a meeting of the minds so as to establish such an agreement. Nor has Defendant proferred adequate evidence in support of its theories that Plaintiff improperly interfered with Defendant's business relationships or that Plaintiff owes Defendant credit for defective product. Under these circumstances, the Court finds Plaintiff entitled to judgment in its favor, on an account stated for the amount of $150,872.98.

Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment (doc. 90) on its claim on account, DENIES the

14

defenses asserted by Defendant A. R. Soltis West, LLC, and AWARDS

Plaintiff $150,872.98 plus interest, payable and due immediately.


        SO ORDERED.


Dated: June 17, 2009          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge